IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00639

TUCKER, ALBIN and ASSOCIATES, INC.,

        Plaintiff,

v.

WILLIAM M. HENNESSY,

        Defendant.

_____

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
_____

Plaintiff, TUCKER, ALBIN AND ASSOCIATES, INC. ("Tucker") brings this Complaint against Defendant, WILLIAM M. HENNESSY ("Hennessy" or "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for preliminary and other injunctive relief and damages brought by Tucker against Hennessy for federal and state law trade secret misappropriation and theft, breach of fiduciary duty, breach of non-compete agreement, breach of non-solicitation agreement, breach confidentiality agreement, tortious interference, and for the return of all documents and data that Defendant misappropriated.

2. Court intervention is necessary. If the trade secrets and confidential information continue to be unlawfully possessed by Defendant and utilized to unfairly compete with Tucker, and if Defendant continues unlawfully soliciting Tucker customers

using the improperly gotten confidential information, Tucker will continue to suffer irreparable harm.

## IDENTIFICATION OF PARTIES

3. Plaintiff is Tucker, Albin Associates, LLC ("Tucker"), a Texas company with its principal place of business in Richardson, Texas.

4. Defendant is William M. Hennessy, resident and domiciliary of Highlands Ranch, Colorado.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Tucker's federal trade secret claim pursuant to the Defend Trade Secrets Act of 2016 (DTSA), 18 U.S.C. §§ 1836-39, *et seq.* and 28 U.S.C. §§ 1331 and 1343.

6. This Court has supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367(a).

7. Subject matter jurisdiction is also premised on 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

8. This Court has personal jurisdiction over Defendant as Defendant has had continuous and systematic conduct within Colorado, Defendant purposefully availed himself of the privilege of acting in Colorado and the causes of action arise out of Defendant's activities in Colorado.

9. Venue is proper in this district, pursuant to 28 U.S.C. § 1391, as this is a civil action wherein jurisdiction is founded on diversity of citizenship and this is the judicial

district in which a substantial part of the events or omissions giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

10. Plaintiff Tucker is a commercial collection agency with offices in Richardson, Texas, Chicago, Illinois, and Denver, Colorado.

11. From July 7, 2014 until February 9, 2021, Defendant worked as a business development representative and salesperson for Tucker out of its Denver office.

12. Upon information and belief, while still employed by Tucker, Hennessey set up a competing collections company and used Tucker's trade secrets and other confidential data to solicit unfairly and do business unlawfully with Tucker's customers.

13. Upon information and belief, Hennessey continues to compete unfairly with Tucker using Tucker's trade secrets and other confidential data to solicit unlawfully and do business with Tucker's customers, in violation of his employment agreement and federal and state laws.

14. On July 7, 2014, Defendant executed an agreement with Tucker entitled: "Employment, Confidentiality, Noncompete, and Nonsolicitation Agreement of Tucker, Albin and Associates, Incorporated." *See* attached **Exhibit 1**, 7/7/2014 Employment, Confidentiality, Noncompete, and Nonsolicitation Agreement of Tucker, Albin and Associates, Incorporated ("Agreement").

15. The Agreement provides:

> **4.** **<u>Exclusive Services/Duty of Loyalty</u>** Employee shall not, without the consent of Tucker, either directly or indirectly, engage in any other profession or business which could necessitate the Employee giving an appreciable

portion of his/her time and effort to the detriment of Tucker's business or which could be in any competition with or be detrimental to Tucker and Employee further agrees and acknowledges that s/he owes a duty of loyalty and fiduciary duty to Tucker during the course of his/her employment.

**5.    Confidential Information**  Employee recognizes and acknowledges that the confidential and proprietary information which Tucker promised to provide Employee, and which Tucker provided to Employee and any other confidential information which Employee received from Tucker or otherwise obtained during Employee's employment at any time with Tucker, including certain Tucker trade secrets, if any, (collectively, "Confidential Information"), constitutes a valuable, special and unique Tucker asset which Tucker has a legitimate and important interest in protecting . . . Employee agrees to use the Confidential Information for the exclusive benefit of Tucker.

**6.    Restrictive Covenants**  In consideration for Tucker's promise to provide confidential information to Employee, and Tucker's actual providing such Confidential Information described in Sections 2 and 5, Employee covenants and agrees as follows:

(a)    Employee shall not disclose or use at any time Confidential Information during or subsequent to his/her employment, except as required to perform his/her duties in furtherance of his/her employment and this Agreement;

• • •

Employee further covenants as follows:

(c)    During employment with Tucker, and for a period of twelve (12) consecutive calendar months following the termination of Employee's employment with Tucker, Employee shall not directly or indirectly, except as required to perform his/her duties in furtherance of this Agreement;

• • •

(ii)    Solicit, attempt to solicit, or interfere with Tucker's business relationships, or do business with any Tucker Customers or Referral Sources in the Restricted Area that Employee either;

(A)    received Confidential Information about, or

(B)    Had contact with within the last twenty-four (24) month period during Employee's employment with Tucker. "Restricted Area" means a 75 mile radius from any Tucker facility where Employee worked, provided services, or supervised employees or projects; or

        (iii)    Assist or engage in any Competing Business, as an employee, consultant, partner, owner, officer, director, contractor or shareholder, in the Restricted Area. "Competing Business" means any business involving commercial collection services, consultation or any related activities that involve the same type of services offered by Tucker or any business so similar in nature that it would displace Tucker business opportunities or Tucker customers.

16. Pursuant to the terms of the Agreement and applicable law, Defendant was prohibited from working for a competing business while he was employed by Tucker. *See* Exh. 1, p. 2, ¶ 4.

17. Pursuant to the terms of the Agreement and applicable law, Defendant is prohibited from using or disclosing Tucker's trade secrets and confidential information for any purpose other than for the benefit of Tucker. *See id*. p. 3, ¶ 5 and ¶ 6(a).

18. Pursuant to the terms of the Agreement and applicable law, upon Defendant's employment termination, he must deliver immediately to Tucker all materials constituting or containing Confidential Information and all other Tucker property in all forms without retaining copies. *See id*. p. 3, ¶ 6(b).

19. Pursuant to the terms of the Agreement and applicable law, except for Tucker's benefit, while employed by Tucker and until February 9, 2022, Defendant is barred from soliciting or interfering Tucker's customers or doing business with Tucker's customers. *See id*. pp. 3-4, ¶ 6(c)(ii).

20. Pursuant to the terms of the Agreement and applicable law, except for Tucker's benefit, while employed by Tucker and until February 9, 2022, Defendant is barred from engaging in any competing business with Tucker. *See id*. p. 4, ¶ 6(c)(iii).

21. For many years, Defendant was a successful business development representative and salesperson, which permitted him to develop significant business relationships with Tucker customers. In return, Defendant was fairly compensated.

22. During the past year, however, several Tucker customers for which Defendant was responsible to service stopped placing accounts or significantly decreased the numbers of accounts placed with Tucker for collection.

23. During the past year, Defendant also failed to develop new customers, which was an important aspect of his responsibilities as a Tucker salesperson.

24. Because Defendant was a well-established Tucker salesperson and considering the COVID-19 pandemic, Tucker allowed Defendant significant leeway, even though he was performing poorly.

25. Defendant's performance did not improve, and account placements by Tucker customers serviced by Defendant remained historically low.

26. Concerned about its customer satisfaction, Tucker assigned another salesperson follow-up on certain customers serviced by Defendant.

27. On February 5, 2021, *while Defendant was still employed by Tucker*, Tucker confirmed that Defendant was competing with Tucker and had solicited one or more of Tucker's customers for his own personal benefit and for the benefit of a competing business.

28. As evidenced by the attached transcript of two 2/5/2021 telephone calls (**Exhibit 2**), Defendant was secretly providing commercial debt collection services on behalf of a competing business to a Tucker customer. Per the recorded call, the customer representative told Tucker:

| | |
|---|---|
| **Tucker Rep:** | Hey [customer rep.], this is Brian with Tucker Albin and Assoc. how are you doing? |
| | It's been a while I was wondering if you guys changed your policy, went to a different agency- just trying to figure out what happened there. |
| **Customer Rep.:** | Nope, we are actually still using our rep from Tucker Albin – he's gone out on his own and I was perfectly happy with him. |

29. Based upon a Tucker customer, Defendant was operating his own competing collections company and providing debt collection services to the Tucker customer while he was employed by Tucker. *See* Exh. 2.

30. Upon information and belief, Defendant misappropriated trade secrets and confidential customer information provided to him to unfairly compete against Tucker and for his own use personal benefit and/or for the benefit of his own collections company.

31. Upon information and belief, Defendant has improperly used and continues improperly to use Tucker's Trade secrets and confidential materials and information, including customer lists, pricing, contract information and contact information, to solicit Tucker's customers improperly on behalf of his competing collections company, which has resulted in Tucker customers ceasing to do business with Tucker and, instead, placing business with Defendant's collection company.

32. All conditions precedent to the bringing of this action and the following claims have occurred or have been performed.

## CLAIMS FOR RELIEF

### COUNT ONE
### MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT OF 2016 ("DTSA") 18 U.S.C. § 1836, ET SEQ.

33. Plaintiff re-alleges and incorporates ¶¶ 1-32, above.

34. This is an action for injunctive relief and damages pursuant to 18 U.S.C. § 1836(B)(3)(A).

35. Tucker owns and possesses certain trade secret information.

36. Tucker's trade secret information relates to services used and sold in interstate commerce.

37. Tucker has taken reasonable measures to keep such information secret and confidential.

38. Tucker's trade secret information derives independent value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

39. Upon information and belief, Defendant stole or acquired Tucker's confidential trade secret information through improper means by theft or breaching his duty of secrecy.

40. Upon information and belief, Defendant shared or disclosed to third parties the confidential trade secret information improperly taken from Tucker in furtherance of his unlawfully established competing business.

41. Therefore, Tucker's trade secrets were willfully and maliciously appropriated by Defendant.

42. Defendant did not have Tucker's consent, express or implied, to appropriate or disclose Tucker's trade secrets for his own use or for the use or benefit or any third party.

43. Tucker reasonably fears that if Defendant is not enjoined from the wrongful conduct, he will continue to misappropriate Tucker's trade secrets to solicit and steal Tucker's customers.

44. Defendant's wrongful conduct has caused and, unless and until enjoined by this Court, and will continue to cause irreparable harm to Tucker.

45. Injunctive relief would serve the public interest.

46. Tucker is without an adequate remedy at law, as there are no quantifiable damages that will fully compensate Tucker, and Tucker has a substantial likelihood of success on the merits.

47. Pursuant to the DTSA, Tucker is entitled to injunctive relief requiring that Defendant cease any further misappropriation of Tucker's trade secrets, that he immediately return all such trade secrets to Tucker, and that Defendant be enjoined from any further utilization of Tucker's trade secrets.

48. Tucker is further entitled to damages for actual losses caused by the misappropriation of the trade secrets and damages for any unjust enrichment caused by the misappropriation of trade secrets that is not addressed in computing damages for actual loss, along with exemplary damages in an amount not more than two times the amount of damages awarded, and for an award of attorneys' fees and costs pursuant to 18 U.S.C. § 1863(b)(3)(D).

## COUNT TWO
## VIOLATION OF THE COLORADO UNIFORM TRADE SECRETS ACT ("CUTSA") COLO. REV. STAT. ANN. §§ 7-74-101, ET SEQ.

49. Plaintiff re-alleges and incorporates ¶¶ 1- 48, above.

50. The Tucker information misappropriated by the Defendant constitutes trade secrets within the meaning of CUTSA.

51. Defendant was aware that certain confidential information to which he was given access was deemed Tucker trade secrets. Per the Agreement, Defendant confirmed that he would not make use of or disclose Tucker's trade secrets or confidential information.

52. As a result of Defendant's willful and malicious misappropriation of Tucker's trade secrets and confidential information, Tucker has suffered damages, including but not limited to, loss of goodwill, loss of competitive market position, lost profits, and the economic harm associated with the disruption of customer relationships, in an amount to be determined at trial.

53. Tucker is without an adequate remedy at law as Tucker will have difficulty calculating damages that Tucker has suffered and will continue to suffer.

54. As a result of Defendant's misappropriation of Tucker's trade secrets and confidential information, Tucker is entitled to injunctive relief against Defendant, enjoining him from all further use of the confidential and proprietary information.

55. Due to Defendant's willful and malicious conduct, Tucker is further entitled to recover damages, including exemplary damages, and reasonable attorney's fees under COLO. REV. STAT. ANN. § 7-74-104(2) and § 7-74-105.

## COUNT THREE
## BREACH OF CONTRACT

56. Plaintiff re-alleges and incorporates ¶¶ 1-55, above.

57. Defendant is contractually prohibited from working for a competing commercial collections company while he is employed by Tucker and for 12 months following his Tucker employment separation date. *See* Exh. 1, Agreement, p. 2, ¶ 4 and p. 4, ¶ 6(c)(iii).

58. Defendant is contractually prohibited from using or disclosing Tucker's trade secrets or confidential and proprietary materials and information. *See* Exh. 1, pp. 2-3, ¶ 5.

59. For a period of twelve months after his Tucker employment separation date, Defendant is contractually prohibited from soliciting Tucker's customers in an effort to have the Tucker customers cease doing business with Tucker and/or to enter into a commercial relationship with a competitor to Tucker's detriment. *See* Exh. 1, pp. 3-4, 6(c)(ii).

60. Upon information and belief, while employed by Tucker and during the 12-month non-solicitation period following his Tucker separation date, Defendant has solicited and continues to solicit Tucker customers using Tucker's trade secrets and confidential materials and information. *See* Exh. 2 (transcript of telephone call with Tucker customer).

61. Tucker has suffered and will continue to suffer damages as a result of these contract breaches, including but not limited to economic losses, loss of good will and other harm.

62. Pursuant to the Agreement, Tucker is entitled to injunctive relief and other damages and costs for breach of the Agreement.

## COUNT FOUR
### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

63. Plaintiff re-alleges and incorporates ¶¶ 1-62, above.

64. A duty of good faith and fair dealing is implied in the performance of every contract to facilitate enforcement of the contract and to realize the reasonable contractual expectations of the parties.

65. Defendant's unlawful operation of a competing business while employed by Tucker, Defendant's wrongful solicitation of Tucker's customers, and Defendant's wrongful use of Tucker's confidential and propriety information are breaches of his duties of good faith and fair dealing in that the conduct has resulted in harm to the business relationships that Tucker enjoys with its customers.

66. As a result of Defendant's breach of his duties, Tucker has suffered and continues to suffer damages, including lost profits, in amounts to be determined at trial.

67. Tucker is entitled to damages and a permanent injunction to prevent further injury as a result of Defendant's breach of good faith and fair dealing.

## COUNT FIVE
### BREACH OF LOYALTY

68. Plaintiff re-alleges and incorporates ¶¶ 1- 67, above.

69. Defendant has a duty of loyalty to his employer.

70. Defendant breached his duty of loyalty to Tucker by secretly setting up a competing business while still employed by Tucker.

71. As a result of Defendant's breach of duty, Tucker has suffered and continues to suffer damages, including lost profits, in amounts to be determined at trial.

## COUNT SIX
## TORTIOUS INTERFERENCE WITH CONTRACT
## AND WITH BUSINESS RELATIONS

72.     Plaintiff re-alleges and incorporates ¶¶ 1- 71, above.

73.     As a result of his employment with Tucker, Defendant knew of Tucker's business relationships with specifically identifiable customers.

74.     Defendant knowingly, intentionally, and unjustifiably utilized Tucker's confidential information and trade secrets that were misappropriated from Tucker to contact, induce or solicit Tucker customers to terminate their relationships or otherwise cease doing business with Tucker, and to interfere with Tucker's relationships with its customers.

75.     Defendant did and continues knowingly and wrongfully to solicit and induce Tucker customers to cease doing business with Tucker and to place business with Defendant's competing collections business.

76.     Defendant's conduct constitutes tortious interference with Tucker's contracts and prospective business relations.

77.     As a result of Defendant's tortious interference, Tucker has suffered and continues to suffer damages, including lost profits, in amounts to be determined at trial.

78.     Tucker is entitled to damages and injunctive relief to prevent further injury as a result of Defendant's tortious interference with Tucker's contract and business relationships.

## COUNT SEVEN
## UNFAIR COMPETITION

79. Plaintiff re-alleges and incorporates ¶¶ 1- 78, above.

80. Defendant has copied and continues to copy Tucker's services and improperly and/or deceptively solicit Tucker customers using Tucker's confidential information that he has misappropriated from Tucker. Such wrongful conduct constitutes unfair competition under applicable law.

81. As a result of Defendant's unfair competition, Tucker has suffered and continues to suffer damages, including lost profits, in amounts to be determined at trial.

82. Tucker is entitled to damages and a permanent injunction to prevent further injury as a result of Defendant's unfair competition.

**WHEREFORE,** Plaintiff, Tucker, Albin & Associates, Inc., prays for judgment in its favor and relief as follows:

a. That a preliminary and permanent injunction be issued against Defendant, restraining, enjoining and prohibiting him from destroying, altering, deposing of, concealing, secreting, or tampering with in any manner any and all records or other documents or materials relating to or referring in any manner to Tucker and its customers and former customers;

b. That a preliminary and permanent injunction be issued precluding Defendant, or anyone acting in concert or participation with him, from directly or indirectly (1) soliciting or seeking to solicit or induce or

attempt to induce any customer or other business relation of Tucker to cease doing business with Tucker for a period of twelve months following the last day of Defendant's employment with Tucker, through February 9, 2022; (2) soliciting or seeking to solicit or induce or attempt to induce any customer or other business relation of Tucker to enter into a commercial relationship to the detriment of Tucker following the last day of Defendant's employment with Tucker, through February 9, 2022; and (3) using or disclosing Tucker's trade secrets and/or confidential materials and information;

c. For an accounting of all books, documents and financial records in Defendant's possession, custody or control to determine the extent and scope of all damage incurred by Tucker in connection with this matter;

d. That judgment be rendered in favor of Tucker and against Defendant for contractual, statutory, exemplary, treble and compensatory damages, as will be proven at the trial of this matter;

e. That an award for attorneys' fees, costs and pre- and post-judgment interest be made to Tucker as allowed by law;

f. For a trial by jury on all the facts and issues triable herein; and

g. For any additional relief to which this Court deems Tucker to be entitled.

Dated:  March 3, 2021                    Respectfully submitted,

s/ *Louis Leonard Galvis*
Louis Leonard Galvis (CO Bar No. 32885)
SESSIONS, ISRAEL & SHARTLE, LLC
645 Stonington Lane
Fort Collins, CO  80525
Telephone:  (970) 223-4420
Facsimile:  (504) 828-3737
E-mail:  lgalvis@sessions.legal

Kevin G. Barreca
SESSIONS, ISRAEL & SHARTLE, LLC
3850 N. Causeway Blvd., Suite 200
Metairie, Louisiana 70002-7227
Telephone: (504) 828-3700
Facsimile:  (504) 828-3737
E-mail:  kbarreca@sessions.legal

**Attorneys for Plaintiff**
**Tucker, Albin and Associates, Inc.**